# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| DENNIS GRAVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No._____ |
| | ) |
| | ) Division_____ |
| XPO LOGISTICS FREIGHT, INC. | ) |
| | ) |
| Defendant. | ) REQUEST FOR JURY TRIAL |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Dennis Graves ("Plaintiff"), by and through his attorneys, and brings this Complaint for Damages against Defendant XPO Logistics Freight, Inc. ("Defendant"), and alleges and states as follows:

### Parties and Jurisdiction

1. Plaintiff is a male citizen of the United States, residing in Independence, Jackson County, Missouri.

2. Defendant is a Foreign For Profit Corporation organized under the laws of Delaware. At all relevant times, Defendant was authorized to conduct business in the State of Kansas and was doing business in the State of Kansas.

3. Defendant conducts substantial and continuous business and has substantial and numerous contacts with the State of Kansas and Wyandotte County.

4. Plaintiff is an employee within the meaning of the Americans with Disabilities Act as Amended, 42 U.S.C. §§ 12101 *et seq.* ("ADAAA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§1981"), and Kansas Workers' Compensation Law, K.S.A. §§ 44-501 *et seq.*

5. Defendant is an "employer" within the meaning of Title VII, the ADAAA, §1981, and the Kansas Workers' Compensation Law.

6. At all relevant times Defendant has maintained and operated a place of business at 234 East Donovan Road, Kansas City, Wyandotte County, Kansas 66115.

7. A substantial part of the events or omissions giving rise to the claims occurred in the District of Kansas.

8. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1391(b).

## Administrative Procedures

9. On or about September 27, 2019, Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination against Defendant on the basis of discrimination and retaliation (attached as Exhibit 1 and incorporated herein by reference).

10. On or about March 31, 2020, the EEOC issued to Plaintiff his Notice of Right to Sue (attached as Exhibit 2 and incorporated herein by reference) and this lawsuit was filed within 90 days of the issuance of the EEOC's Notice of Right to Sue.

11. The aforesaid charge of discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC investigation, which could reasonably be expected to have grown out of the charge of discrimination.

12. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action and it has been filed within the requisite statute of limitations.

**General Allegations Common to All Counts**

13. Plaintiff (white) was hired to work for Defendant in approximately September 2007, as a Trailer Mechanic.

14. During Plaintiff's time working for Defendant, Plaintiff observed nooses hung multiple times from the overhead of the dock.

15. Notably, everyone that worked in Defendant's shop had to walk underneath the noose every day to get to the shop.

16. Multiple employees reported the noose to Defendant, but it was not taken down until it had been hung from the overhead of the dock for approximately a few years.

17. On multiple occasions, Plaintiff heard Mechanic Richard Howe ("Mechanic Howe") (white) and Mechanic TJ [Last Name Unknown] ("LNU") ("Mechanic TJ") (white) call Defendant's Secretary LaTonya Jackson ("Secretary Jackson") (black) a "nigger bitch."

18. In approximately late 2018 or early 2019, after Mechanic TJ again called Secretary Jackson a "nigger bitch," Plaintiff reported the comment to Defendant's Human Resources.

19. Black mechanics that worked for Defendant were constantly set-up to fail, as Defendant would assign black mechanics to work alone in the shop with no trainers.

20. On one occasion, one of Defendant's employees scraped the word "nigger" on Mechanic Malano Shepard's ("Mechanic Shepard") (black) car.

21. On multiple occasions, Plaintiff witnessed Mechanic John Turner ("Mechanic Turner") (white), Mechanic Jim Thompson ("Mechanic Thompson") (white), and Mechanic Steven Hicks ("Mechanic Hicks") (white) looking over the trucks that black mechanics had worked on to find any little thing wrong and go tell on them, but they would not look over the trucks that white mechanics had worked on.

22. In approximately late May 2019 or early June 2019, Plaintiff was injured at work when a drill bit ran through his hand down to the bone.

23. Plaintiff reported his injury to Defendant and went to see the workers' compensation doctor.

24. Due to the injury, Plaintiff missed approximately three (3) days of work.

25. To this day, Plaintiff still has nerve damage in his dominant left hand causing numbness, stiffness, and tingling.

26. On or about June 10, 2019 or June 11, 2019, Mechanic Hicks told Supervisor Kevin Calhoun ("Supervisor Calhoun") (white) that Plaintiff thought Supervisor Calhoun was racist.

27. Plaintiff then went to Supervisor Calhoun and informed him that he could see how the black guys think Supervisor Calhoun was racist because he does not give the black guys overtime, but he does the white guys, and he lets white guys use their paid time off ("PTO") without any questions, but he does not let the black guys.

28. Approximately the following day, Regional Manager Mark Stets ("Regional Manager Stets") (white) approached Plaintiff and stated that he heard Plaintiff was quitting.

29. Plaintiff responded, "I am not quitting, I don't know where you heard that. I plan on working here until I retire. If you all want to get rid of me you will have to fire me."

30. In approximately May 2019, Mechanic Warrin Clark ("Mechanic Clark") (black) asked Supervisor Calhoun if he could use his PTO for Memorial Day weekend.

31. Supervisor Calhoun said that Mechanic Clark could not use his PTO because Defendant's workload was heavy and no one would be allowed to take time off for the next couple of weeks.

32. Notably, two white employees, Andrew [LNU] on the second shift and Andrew [LNU] on the third shift, were allowed to take time off Memorial Day weekend.

33. Mechanic Clark reported he was being discriminated against to Regional Manager Stets.

34. On or about June 13, 2019, Supervisor Calhoun held a meeting about changing Defendant's PTO plan.

35. When Mechanic Clark asked if Supervisor Calhoun was changing the PTO plan because of him, Supervisor Calhoun responded, "Yes, it is your fault."

36. In response, Plaintiff stated Defendant, "Fuck this racist place."

37. Notably, Mechanic Clark was the only black employee in the meeting.

38. Approximately two (2) hours later, Plaintiff was informed by Human Resources MJ [LNU] ("Human Resources MJ"), Supervisor Calhoun, and Personnel Anita Sloan ("Personnel Sloan") that Plaintiff was being taken out of service for allegedly making workplace threats.

39. Ordinarily, when employees are taken out of service, they are allowed to make a statement, however, Plaintiff was not asked to make a statement.

40. Approximately two (2) weeks later, Plaintiff was terminated by Supervisor Calhoun and Human Resources MJ.

41. Plaintiff informed Human Resources MJ that he was never allowed to make a statement.

42. Human Resources MJ said that if Plaintiff did not give an immediate date to pick up his toolbox, his toolbox would be locked up so that he could not get it.

43. Within approximately one (1) week of his termination, per Defendant's policy, Plaintiff appealed his termination.

## COUNT I
### Retaliation in violation of Title VII 42 U.S.C. §§ 2000e et seq.

44. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

45. Plaintiff engaged in a protected activity under Title VII by reporting what he believed in good faith to be race discrimination to the Defendant.

46. Plaintiff suffered adverse employment actions when he was terminated after his good faith reports.

47. But for Plaintiff's reports of race discrimination, he would not have been terminated.

48. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant; thus, making Defendant liable for said actions under the doctrine of *respondeat superior*.

49. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including retaliation.

50. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

51. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of the Defendant, based on engaging in a protected activity, in violation of Title VII.

52. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

53. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

54. Plaintiff is entitled to recover from Defendant, reasonable attorneys' fees as provided in Title VII.

55. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

**WHEREFORE,** Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT II
### Retaliation in violation of 42 U.S.C. §1981

56. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

57. Plaintiff engaged in a protected activity under 42 U.S.C. §1981 by reporting what he believed in good faith to be race discrimination to Defendant.

58. Plaintiff suffered an adverse employment action when he was terminated after his good faith reports.

59. Plaintiff's reports about race discrimination were a motivating factor in the Defendant's decision to terminate Plaintiff.

60. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant; thus, making Defendant liable for said actions under the doctrine of *respondeat superior*.

61. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including retaliation.

62. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

63. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of the Defendant, based on engaging in a protected activity, in violation of §1981.

64. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

65. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

66. Plaintiff is entitled to recover from Defendant, reasonable attorneys' fees as provided in §1981.

67. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

**WHEREFORE**, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
### Disability Discrimination in violation of 42 U.S.C. § 12101 et seq.

68. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

69. Plaintiff is disabled pursuant to the ADAAA because he suffers from nerve damage in his left hand; also, Defendant regarded Plaintiff as having this disability and has a record of this disability; thus, Plaintiff is a member of a class of persons protected by the ADAAA.

70. Plaintiff's physical impairment substantially affects several major life activities including, but not limited to performing manual tasks and working as described in the ADAAA.

71. Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

72. Plaintiff's disability was a motivating factor in his termination.

73. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

74. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees, including disability discrimination.

75. As shown by the foregoing, as a result of his disability, Plaintiff suffered intentional discrimination at the hands of Defendant in violation of the ADAAA.

76. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income; as well as, other monetary and non-monetary benefits.

77. As a further and direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

78. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

79. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

80. Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

### COUNT IV
**Retaliation in violation of 42 U.S.C. § 12101 et seq.**

81. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

82. Plaintiff engaged in a protected activity by reporting his disability to Defendant and taking the reasonable accommodation of time off work.

83. Defendant terminated Plaintiff as a result of Plaintiff's above-referenced protected activities.

84. The fact that Plaintiff engaged in a protected activity was at least a motivating factor in Defendant's decision to take adverse action against him.

85. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

86. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees, including retaliation.

87. As shown by the foregoing, as a result of engaging in a protected activity, Plaintiff suffered intentional retaliation at the hands of Defendant in violation of the ADAAA.

88. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income; as well as, other monetary and non-monetary benefits.

89. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

90. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

91. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

92. Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## COUNT V
**Wrongful Termination in Violation of Public Policy – Workers' Compensation Retaliation**

93. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

94. Public policy clearly encourages employees to file workers' compensation claims for injuries by accident, arising out of and in the course of the employee's employment. *See* K.S.A. §§ 44-501 *et seq*.

95. Public policy also clearly discourages an employer or agent of the employer from discharging or discriminating against any employee for exercising their rights under the Workers' Compensation Law. *See* K.S.A. §§ 44-501 *et seq.*

96. When Plaintiff suffered a workplace injury and reported that injury to Defendant, Plaintiff exercised his statutory rights under the Kansas Workers' Compensation Law.

97. Defendant knew or anticipated that Plaintiff would file a workers' compensation claim before Defendant terminated his employment.

98. Plaintiff was subsequently terminated by Defendant as a result of Plaintiff exercising his rights under Kansas Workers' Compensation Law.

99. There was a causal connection between Plaintiff's exercise of his workers' compensation rights and Defendant's decision to terminate Plaintiff.

100. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

101. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

102. Defendant failed to properly train or otherwise inform their employees concerning their duties and obligations under Kansas Workers' Compensation Laws.

103. As a direct and proximate result of Defendant's actions, Plaintiff is now suffering and will continue to suffer: monetary damages, loss of wages, loss of benefits, loss of

opportunity, and damages from garden variety emotional distress; all in an amount yet to be determined.

104. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay, lost benefits; front-pay; injunctive relief; for punitive damages; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: /s/ Brittany C. Mehl
Ryan M. Paulus        D Kan 78276
r.paulus@cornerstonefirm.com
Brittany C. Mehl      D Kan 78534
b.mehl@cornerstonefirm.com
8350 N. St. Clair Ave., Ste. 225
Kansas City, Missouri 64151
Telephone             (816) 581-4040
Facsimile             (816) 741-8889
ATTORNEYS FOR PLAINTIFF